IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 3:22-CR-378-N |
| v. | |
| RAYNALDO RIVERA ORTIZ JR. | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR SANCTIONS**

There was no *Brady* violation concerning the second fingerprint report. The defendant's motion should be denied.

**Background**

In December 2023, defense counsel reviewed various items of physical evidence at the FDA's Irving office, including IV bags collected from the surgery facility at which the crimes charged against the defendant occurred. After the review was completed, defense counsel asked the prosecutors if any of the IV bags in evidence had been submitted for fingerprinting. The prosecutors responded that none had, but, following the meeting at the FDA, subsequently asked the FDA agents to request that the Dallas Police Department (DPD) fingerprint three of the IV bags in custody. The DPD did so, producing a report that the government turned over to the defense on February 12, 2024 through its twelfth production of discovery.

Defense counsel did ask the prosecutors if there were any additional reports or experts regarding the fingerprinting on February 20, 2024, and the prosecutors stated that they did not know of any additional reports concerning the fingerprint and did not expect

to list any fingerprint experts for testimony. Subsequently, the prosecutors learned of the second DPD report on March 11, 2024, when they received a copy of it via electronic mail from one of the DPD detectives involved in the original local investigation. The prosecutors learned of this report shortly prior to the defense filing the instant *Brady* motion.

The day after the motion was filed, the prosecutors communicated to the defense that, for defense planning purposes, the government's response to the sanctions motion would state the government would not oppose the defense calling an expert on the fingerprint issue to testify at trial without the notice required under Rule 16 of the Federal Rules of Criminal Procedure.

## Authorities and Argument

To establish a *Brady* violation, the defendant must show the following: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or impeaching, (2) the evidence was suppressed by the prosecution, and (3) the evidence was material. *See United States v. Brown*, 650 F.3d 581, 587-88 (5th Cir. 2011).

Here, there was no *Brady* violation for several reasons. First, the second report was not "suppressed" because, under Fifth Circuit precedent, delayed disclosure is not "suppression." *See United States v. Swenson*, 894 F.3d 677, 683 (5th Cir. 2018) (holding that "the evidence clearly was not suppressed" because, "under this court's caselaw, evidence that is turned over to the defense *during* trial, let alone *before* trial, has never been considered suppressed"); *United States v. Morrison*, 833 F.3d 491, 508 (5th Cir. 2016) (rejecting the defense's argument that the government committed a *Brady* violation

where the defense received the material on the Friday before trial started, so the material was not "suppressed."); *Powell v. Quarterman*, 536 F.3d 325, 335 (5th Cir. 2008) (holding that evidence turned over to the defense during trial is not "suppressed" within the meaning of *Brady*); *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994) (holding that a defendant "cannot allege a *Brady* violation because the prosecution did not suppress any evidence" where the existence and contents of the route sheet were disclosed at trial); *United States v. McKinney*, 758 F.2d 1036, 1049-50 (5th Cir. 1985) (holding that, even assuming the evidence was exculpatory and material, the government did not suppress the evidence, but rather disclosed it to the defense during trial).

Second, the report was not suppressed because it was discoverable (and, in fact, was discovered) through the defendant's due diligence (presumably through a Rule 17 subpoena). "To constitute suppressed evidence under *Brady*, the evidence must not have been discoverable through the defendant's due diligence." *United States v. Dvorin*, 817 F.3d 438 (5th Cir. 2016) (*citing Brown*, 650 F.3d at 588)); *see also United States v. Skilling*, 554 F.3d 529 (5th Cir. 2009) ("Evidence is not 'suppressed' if the defendant knows or should know of the essential facts that would enable him to take advantage of it.") (internal citation omitted).

Third, the accidental delayed disclosure of the second report is not material. Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Dvorin*, 817 F.3d at 451. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*; *see also McKinney*, 758 F.2d at 1051 ("Because there is

**Government's Response to Motion for Sanctions – Page 3**

substantial evidence supporting [the defendant's] conviction, which in no way depends on the credibility of [a witness] and because [the witness'] credibility was effectively impeached thorough cross-examination in which [the witness'] propensity to lie and to threaten people was fully explored, we are confident that utilization of the [the suppressed evidence] during cross examination would not have affected the outcome of this case.").

Although the materiality element of *Brady* is typically reviewed post-trial, it is extremely likely that the evidence at issue here will not be material. Here, the government expects that several witnesses will testify that they handled the IV bags at issue during the facility's investigation of the August 24, 2022 incident, making the evidentiary value of fingerprints on the IV bags extremely weak. There is also extensive video surveillance documenting the defendant retrieving IV bags from and placing them in the warming bin at the facility. Furthermore, defense counsel can still make effective use of the second fingerprint report at trial. In sum, there is no reasonable probability that the delayed disclosure will affect the outcome of the case.

For all these reasons, there was no *Brady* violation.

Indeed, because this case involves delayed disclosure and not suppression (and therefore no *Brady* violation), the proper inquiry is whether the defendant was prejudiced by the tardy disclosure, and if so, what is the proper remedy. *See Morrison*, 833 F.3d at 508-09 (holding that, for delayed disclosure, the analysis turns on whether the defendant was prejudiced by delay); *see also Quarterman*, 536 F.3d at 335-36 (holding that when a claim is untimely disclosure of *Brady*, the court looks to whether the defendant was

prejudiced by the delay, and "a defendant is not prejudiced if the evidence is received in time for its effective use at trial"); *see also United States v. Chesser*, 795 F. App'x 242, 244-45 (5th Cir. 2019).

Here, the only prejudice that the defendant alleges is that "had the violation been discovered earlier, the defense could have sought an expert to assess the likelihood that a person who handled the bag would have left a latent print, given the known fact that someone who handled the bag did in fact leave a print." (Doc. 72, p. 4.)

The defense's allegations are not compelling. The defendant acknowledges that he has known since February 12, 2024 that someone who handled the bag left a fingerprint. The defendant has also known since that time that AFIS did not match the print on the IV bag to the defendant (whose prints are obviously in AFIS). Thus, the defendant already had every incentive to pursue this evidence prior to the discovery deadline—he could have asked to perform fingerprint testing for himself, and he could have sought an expert to testify on fingerprinting and related issues—but apparently he did not do so. Importantly, the government has also now indicated that it will not oppose the defendant's use of such an expert at trial. The defendant therefore has failed to show the late disclosure of the supplemental report has prevented him from effectively using it at trial.

Moreover, the sanctions that the defendant has asked for are excessive for several reasons. First, the delayed disclosure did not cause the defendant any prejudice that cannot be cured by the government's proposal concerning a fingerprint expert testifying

at trial. Second, the delayed disclosure was not caused by any bad faith by the government, and the government has acted promptly to correct the oversight.

The Fifth Circuit addressed the appropriateness of imposing sanctions in *United States v. Garrett*, noting that courts consider (1) why disclosure was not made, (2) the amount of prejudice to the opposing party, (3) the feasibility of curing such prejudice with a continuance of the trial, and (4) any other relevant circumstances. 238 F.3d 293, 297-98 (5th Cir. 2000). Emphasizing the district court's finding that the government acted in good faith and that the government's tardy disclosure was an oversight, the Fifth Circuit reasoned that the question of prejudice turned on whether the defendant had time to put the tardily disclosed information to use, not whether some extra effort was required by the defendant. *Id*. "In light of the absence of bad faith on the part of the government, the minimal amount of substantive prejudice because of the cumulative nature of the tardily disclosed materials, and the availability of a much less severe sanction than striking witnesses with the effect of eviscerating the government's case, [the Fifth Circuit found] that the district court could most certainly have eliminated the minor prejudice with either a brief delay or a less severe sanction [than the exclusion-of-witnesses sanction the district court imposed]." *Id.* at 301.

Similarly, here, because the government's tardy disclosure did not cause the defendant any prejudice that cannot be cured, the tardy disclosure was not caused by any bad faith by the government, and the government has acted promptly to correct the oversight, the sanctions the defendant seeks are excessive and unnecessary. Indeed, the Fifth Circuit has held that extreme sanctions, such as dismissal of the indictment and

exclusion of government witnesses, are not necessary where the government did not act in bad faith. *See Dvorin*, 817 F.3d at 453 (noting that "a district court will not impose severe sanctions, like suppression of evidence, where the government's discovery violations were not committed in bad faith"); *United States v. Bentley*, 875 F.2d 1114, 1118 (5th Cir. 1989) (holding that the district court did not abuse its discretion when it decided not to exclude the late-disclosed evidence where the defendant "has not shown that any violation of the discovery order by the government necessitated the most extreme sanction possible"); *Chesser*, 795 F. App'x at 245 (admonishing government on the importance of its discovery obligations where the government violated Rule 16 but not otherwise requiring any sanction).

## Conclusion

Because the government did not suppress the second report and the evidence in it is not material, the government did not violate *Brady*. Rather, all the defendant has shown is that there has been an accidental late disclosure, which, given the government's proposal concerning presentation of an "unnoticed" fingerprint expert at trial, has not prejudiced him. Because there has been no *Brady* violation and no circumstances warranting the severe sanctions requested by the defense, the defendant's motion for sanctions should denied.

Respectfully submitted,

LEIGHA SIMONTON
UNITED STATES ATTORNEY

          *s/ John J. de la Garza III*
John J. de la Garza III
Texas Bar No. 007964555
Assistant United States Attorney
1100 Commerce Street, Room 300
Dallas, Texas 75242-1699
Telephone: 214-659-8682
Email  john.delagarza@usdoj.gov

PATRICK R. RUNKLE
Senior Litigation Counsel
RACHEL E. BARON
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice
P.O. Box 386
Washington, DC  20044-0386
202-532-4723

## Certificate Of Service

I certify that a copy of this pleading was served on counsel for the defendant via ECF on the 18th day of March 2024.

          *s/ John J. de la Garza III*
John J. de la Garza III
Assistant United States Attorney

**Government's Response to Motion for Sanctions – Page 8**