UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | 3:22-CR-378-N |
| | § | |
| RAYNALDO RIVERA ORTIZ, JR. | § | |

### REPLY IN SUPPORT OF MOTION FOR SANCTIONS

On January 10, 2024, a detective on this case – classically a part of the "prosecution team" -- possessed a report that excluded the defendant as the source of a fingerprint. That print had been recovered from the purported instrumentality of the crime charged in the indictment. The defense asked whether any such report existed and on February 26, 2024, the prosecutor said, in writing, that he didn't know of any. Then, the prosecution failed to produce the report at this Court's deadline for *Brady* material.

This course of events is profoundly troubling. Again, the prosecution's failure to turn over important and favorable evidence is repeatedly implicated in miscarriages of justice. *See* John B. Gould, *et al*, *Mapping the Path of* Brady *Violations: Typologies, Causes & Consequences in Erroneous Conviction Cases*, 71 Syr. L. Rev. 1061, 1064 (2021)(citing Brian Gregory, Brady *is the Problem: Wrongful Convictions and the Case for "Open File" Criminal Discovery*, 46 U. S.F. L. Rev. 819, 821 (2012), Jon B. Gould, *et al*, *Predicting Erroneous Convictions*, 99 Iowa L. Rev. 471, 477 (2014), and J. Paul Johnson, *Study Reveals 10 Factors in Wrongful Conviction Cases*, Am. Univ. (Mar. 11, 2013), https://www.american.edu/media/news/spa_news_wrongful-convictions-study.cfm). It should therefore be met with firm deterrence when it comes to light. Further, the record here contains

1

absolutely no reason to think that the report would have *ever* been produced if the defense had simply accepted the prosecutor's prior written response at face value. It also contains no evidence about the reason for the report's non-production or the prosecutor's prior written statement.

Even taking all of the representations made by the prosecution in ECF No. 82 as evidence, they would not provide sufficient information for this Court to make a reasonable decision as to the proper response. Specifically, the prosecutions' representations do not provide sufficient information regarding the first prong of the analysis: "the reasons why disclosure was not made." *United States v. Garrett*, 238 F.3d 293, 298 (5th Cir. 2000).

The prosecutor calls the non-disclosure "accidental," (Response, at 7), but this is not very illuminating. Whose accident? The defense assumes that neither the detective nor the agent had actually informed the prosecutor of the second report excluding the defendant when he wrote the February 26, 2024, letter. But, had the Detective told the Agent? If so, why didn't the Agent turn it over to the prosecutor? If the Agent knew about the report and never told the prosecutor, then why not? Did the prosecutor ask the Detective or the Agent or the technician whether any such report existed before answering a *Brady* request and disclaiming all knowledge of the report's existence? If so, why did he receive false information? If he didn't ask, why not? And if not, when did he plan to do so? What measures has he taken to make sure there is no other undisclosed favorable information in the files of his law enforcement partners?

This information is not merely important to determine the proper response to the prior violation of the scheduling order: *it may itself be* Brady *information*. If the Detective did not bother to tell the Agent about the report, or the Agent did not tell the prosecutor, this tends to show bias, disregard for the possibility of innocence, or sloppiness on the part of key government

2

witnesses. *See Kyles v. Whitley*, 514 U.S. 419, 447 (1995)(suppressed evidence was material where "defense could have laid the foundation for a vigorous argument that the police had been guilty of negligence."); *United States v. Bagley*, 473 U.S. 667 (1985)(government must turn over impeachment evidence as well as exculpatory evidence). The government's response does not suggest any intent to turn over everything it knows about the chain of communication regarding this report. A hearing could help it do so.

The government asks this Court to issue no sanction, save giving the defendant the right to call his own fingerprint expert. (Response, at 7). But this places the government in the same position it would have been had it never disclaimed knowledge of an exculpatory fingerprint report. Actually, it places the government in a little better position, since the defense has less time to account for the issue than it would have had if the government had followed this Court's orders. Accordingly, it gives the government absolutely no disincentive to repeat the conduct.

Arguing against a meaningful sanction, the government first argues that this Court need not order a sanction because the evidence was not suppressed. (Response, at 2-3). True, a defendant must show that evidence has been "suppressed" in order to make out a post-conviction claim for *Brady* relief. *See* United States v. Swenson, 894 F.3d 677, 683 (5th Cir. 2018). This Court's scheduling order, however, does not forbid "Brady violations." Rather, it affirmatively compels the government to turn over exculpatory information:

> The Government shall in accordance with *Brady v. Maryland*, 373 U. S. 83 (1963), provide each defendant with all of the exculpatory evidence it possesses concerning that defendant thirty-five (35) days before trial.

(Court's Order of January 2, 2023)(ECF No. 46).

The government was required to produce all exculpatory evidence by February 26, 2024; instead, when asked very specifically about a piece of exculpatory evidence, it said that it didn't know anything about that evidence.

For the same reason, it is irrelevant whether the evidence would independently satisfy *Brady*'s materiality standard. This Court's order required the production of "all of the exculpatory evidence [the government] possesses concerning the defendant." A normal speaker of English would understand the term "exculpatory" to capture all evidence "***tending*** or serving to exculpate." *See Webster's online*, entry=exculpatory (emphasis added), *available at https://www.merriam-webster.com/dictionary/exculpatory, last visited March 2, 2024*. So would a lawyer. *See* BLACK'S LAW DICTIONARY (11th ed. 2019)("EVIDENCE…exculpatory evidence. Evidence ***tending to*** establish a criminal defendant's innocence.")(emphasis added). The report here excluding the defendant as the source of a print on the purported instrumentality of the crime. Whether it independently alters the outcome of the case – a fact we can't know yet – that report at least "***tends to***" show innocence.

The government wants to read the scheduling order as a mere exhortation against the kind of misconduct that could later jeopardize a conviction, rather than an order to turn over all favorable information. In its view, the order only orders production if non-production would constitute a *Brady* violation. (Response, at 2-3).

There are several problems with this reading. First, it makes the Court's order superfluous. The due process clause already requires the production of all material and favorable information. If this is all the scheduling order demands, there would be no need for it. Second, the order is intended to govern the government's pretrial conduct, and presumably to be enforceable in some way. But under the government's reading, there is no way to evaluate

4

whether unproduced evidence violates the order, because the Court does not know the full scope of the parties' evidence. By contrast, if the order simply tells the government to turn over all favorable information, it is easy to know which evidence qualifies. Thus, under the defendant's reading, the order can be easily followed and enforced.

In any case, the evidence *was* material. The government's sole materiality argument is that it can prove the defendant handled IV bags. (Response, at 4). It cannot, however, prove that he handled *the only IV bags in which it claims to have found poison*, notwithstanding the fact that someone left a print on one of them. This is game-changing evidence, and certainly meets the standard of materiality. After all, "a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal…" *Kyles*, 514 U.S. at 434.

Finally, the government argues against a sanction because the defense suffered no prejudice. The government is wrong. The defense did not know whether the print possessed sufficient detail for manual comparison until it received the report on March 8, 2024. For this reason, the defense was in no position to undertake comparison – it did not even know whether an examiner would think such comparison possible. In turn, that precluded the defense from accounting for the exculpatory fact as it prepared for trial.

In any case, prejudice is but one factor to consider in fashioning a sanction. *See Garrett*, 238 F.3d at 297-98. The Court should also consider (and determine) who knew about the report and when, the significance of the report, the fact that the report was exculpatory rather than inculpatory, and the fact that the government can't prove that it would have produced the report on its own initiative. If the defendant's independent discovery of a discovery violation invariably

defeats the need for a remedy, the government will be able to violate this Court's order with impunity.

The government cites *Garrett* for the proposition that it should not suffer an extreme sanction, but that case does not help its position. (Response, at 6). *Garrett* involved the non-production of "cumulative" evidence, not the sole evidence excluding the defendant as the source of a fingerprint on the instrumentality of the crime. *Garrett*, 238 F.3d at 301. Further, *Garrett* says that a district court did not abuse its discretion by declining sanctions "with the effect of eviscerating the government's case." *Id.* at 301. But there are plenty of sanctions that would not eviscerate the government's case. It would not eviscerate the government's case to tell the jury what happened and let it draw such conclusions as it wishes. Nor would it eviscerate the government's case to order an outside review of its files for other undisclosed evidence, or to require supervisory guarantees of the government's compliance.

Both *United States v. Dvorin*, 817 F.3d 438 (5th Cir. 2016) and *United States v. Bentley*, 875 F.2d 1114 (5th Cir. 1989), are to like effect. In those cases, the district courts declined to suppress evidence as a discovery sanction, and the Fifth Circuit affirmed. *See Dvorin*, 817 F.3d at 453; *Bentley*, 875 F.2d at 1118. But those holdings don't exclude lesser sanctions, such as jury instructions or outside supervision. And they don't identify the limit of the district court's authority to order sanctions, only its authority to forego them.

The government violated the most important piece of this Court's discovery order and wants to be placed in the same position (or better) it would have occupied without the violation. This is not "the least severe sanction that will accomplish the desired result-prompt and full compliance with the court's discovery order." *United States v. Sarcinelli*, 667 F.2d 5 (5th

Cir.1982). The government's proposal does not ensure compliance with the court's discovery order at all.

## CONCLUSION

The defense respectfully moves for a pre-trial hearing for the relief discussed herein and in the previously filed Motion for Sanctions.

Respectfully submitted,

*/s/ John M. Nicholson*
JOHN M. NICHOLSON
Assistant Federal Public Defender
Northern District of Texas
Texas Bar # 24013240
525 Griffin Street, Suite 629
Dallas, Texas 75202
Phone (214) 767-2746
Fax (214) 767-2886
john_nicholson@fd.org

*s/ Marti R. Morgan*
MARTI R. MORGAN
Assistant Federal Public Defender
Northern District of Texas
Florida Bar # 91879
525 Griffin Street, Suite 629
Dallas, Texas 75202
Phone (214) 767-2746
Fax (214) 767-2886
marti_morgan@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2024, I electronically filed the foregoing document using the Court's CM/ECF system, thereby providing service on attorneys of record.

*/s/ John M. Nicholson*
JOHN M. NICHOLSON