UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | 3:22-CR-378-N |
| | § | |
| RAYNALDO RIVERA ORTIZ, JR. | § | |

DEFENDANT'S BRIEF TO THE COURT

Pursuant to the Court's Order of September 18, 2024 (Doc. 184), the defense respectfully submits this brief as to: 1) whether the death of Dr. Kaspar should be considered relevant conduct; and 2) who is entitled to make victim impact statements, and whether it would be error for the Court in its discretion to permit others to be heard at sentencing.

The Death of Dr. Kaspar Should Not Be Considered Relevant Conduct

Relevant conduct is defined by USSG § 1B1.3(a), and includes:

**(1)(A)** all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
**(B)** in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were--
    **(i)** within the scope of the jointly undertaken criminal activity,
    **(ii)** in furtherance of that criminal activity, and
    **(iii)** reasonably foreseeable in connection with that criminal activity;
that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;
**(2)** solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;

1

    **(3)** all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and

    **(4)** any other information specified in the applicable guideline.

USSG § 1B1.3(a)(1).

    The death of Dr. Kaspar, even if caused by Dr. Ortiz, which he denies, plainly falls in none of these categories. Subsection (a)(1) captures only that conduct that occurs: 1) during the offense of conviction, 2) in preparation for the offense of conviction, or 3) to avoid responsibility for the offense of conviction.

    The offenses of conviction are five discrete acts of alleged tampering occurring in August of 2022, none of which affected Dr. Kaspar, who died in June of 2022. Dr. Ortiz did not allegedly poison Dr. Kaspar "during" any of the offenses of conviction; the offenses of conviction occurred two months after any poisoning of Dr. Kaspar of Dr. Kaspar could have occurred.

    Nor has the government introduced any evidence, nor made any argument, that Dr. Kaspar's death represented some manner of "preparation" for the offenses of conviction. There is no evidence, for example, that Dr. Ortiz changed a M.O. after learning from Dr. Kaspar's death, nor that the offenses of conviction represented an ultimate goal that Dr. Kaspar's death helped him achieve. If Dr. Kaspar's alleged poisoning is treated as "preparation" for the offenses of conviction, it can only be on the theory that every repetitive offense constitutes a string of "preparations" for the next offense. That theory would eliminate any meaningful distinction between Subsections (a)(1) and (a)(2) of § 1B1.3. Subsection (a)(2) captures some repetitive offenses, namely those that would be grouped under USSG § 3D1.2(d), and those sufficiently connected by a common course of conduct or common scheme. But if (a)(1) treats every repetitive offense as a string of "ongoing

preparations," it would capture all repetitive offenses, eliminating the explicit restrictions found on the application of (a)(2). That would contravenecontravene the canon against surplusage.[1]

Further, any alleged poisoning of Dr. Kaspar cannot have been an effort "to avoid detection or responsibility for" the offenses of conviction. The offenses of conviction had not yet occurred, and the government has offered neither evidence nor argument as to why Dr. Kaspar's death helped Dr. Ortiz avoid detection in allegedly committing the offenses of conviction.

Subsection (a)(2) is entirely off-limits, as the defense's response to the PSR (Doc. 174) explained without meaningful rebuttal. This theory of relevant conduct liability applies "solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts." Section 3D1.2(d) calls for grouping:

> [w]hen the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

USSG § 3D1.2(d). Neither USSG § 2N1.1 nor USSG § 2A2.1 (to which the PSR applies a cross-reference) call for a quantitative measurement of harm such as loss or drug quantity – they only onlycount offense levels. Indeed, USSG § 2A2.1 (the target of a cross-reference) and nearly all of Chapter 2A (which would have governed the death of Dr. Kaspar, had it been charged) are

---

[1] *See United States v. Menasche*, 348 U.S. 528, 538–539 (1955) ("'every clause and word of a statute'" should, "'if possible,'" be given "'effect.'") (quoting *Inhabitants of Montclair Tp. v. Ramsdell*, 107 U.S. 147, 152 (1883)).

expressly excluded from § 3D1.2(d).[2] As such, it it would be erwould be error to treat any offense resulting in Dr. Kaspar's death as relevant conduct under USSG § 1B1.3(a)(2).[3]

Subsection (a)(3) captures "all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions." But, again, Dr. Kaspar's death could not have resulted from the offenses of conviction; it occurred two months earlier. There is no evidence, moreover, that it resulted from preparation for the offenses of conviction.

Finally, Subsection (a)(4) provides that Chapter Two Guidelines may create local rules of relevant conduct. None appears in USSG § 2N1.1.

The government's response to the PSR Objection scarcely disputes any of this. It does not engage with the language of the relevant conduct Guideline at all; rather it ; rather it simply asserts that any challenge to the PSR would "prove too much" because it would not consider an uncharged offense. The notion that defendants suffer punishment chiefly for the offenses of which a jury actually convicts them, however, is hardly absurd. Rather, the limits on the relevant conduct Guideline honor the sacred Constitutional Right to trial by jury, to proof beyond a reasonable doubt, and to fair notice of the charged offense. If the government wishes to seek punishment for the death of Dr. Kaspar, then it should have charged Dr. Ortiz with causing it and attempted to secure the unanimous verdict of a jury.

---

[2] *See* USSG § 3D1.2(d).
[3] *United States v. Randall*, 924 F.3d 790 (5th Cir. 2019).

4

<u>Only Persons Directly and Proximately Harmed by the Offenses in the Counts of Conviction Are Entitled to Make Victim Impact Statements and Should be Allowed to Speak Prior to the Court Imposing Sentence</u>

The government provided the Court and, later, the defense, with a list of nine persons who wish to give victim impact statements at Dr. Ortiz's sentencing: DA, KP, MJ, JK, JM, RL, LS, MN, and MD. Because DA, KP, and MJ are either named victims or a family member of a named victim in a count of conviction, the defense does not contest their status as "crime victims" and their corresponding right to make a victim impact statement. However, for the reasons set forth below, the defense objects to the remaining six and the Court should not permit them to offer evidence for consideration in connection with Dr. Ortiz's sentence.

"Crime victims" do indeed enjoy the right to be reasonably heard at any public proceeding involving release, plea, sentencing, or any parole proceeding.[4] However, "crime victim" is, per the Crime Victims Rights Act ("CVRACVRA"), a term of art: the term 'crime victim' means a person *directly and proximately harmed as a result of the commission of a federal offense* or an offense in the district of Columbia.[5] And it is not just *any* federal offense that triggers a person's status as a "crime victim," but rather *the* crime.[6] The question for this Court, then, is not whether JK, JM, RL, LS, MN, and MD ought to be permitted to make victim impact statements pursuant to 18 U.S.C. § 3771(a)(4), but rather whether they are "crime victims" per the CVRAVRA. And, when deciding that question, the defense respectfully submits that the Court should be mindful of the government's request that it punish Dr. Ortiz for Dr. Kaspar's death even though it declined to charge that accusation and have it resolved by a jury. In evaluating whether a District Court erred as to relief requested under the CVRA V, the Fifth Circuit reviews "the district court's legal

---

[4] 18 U.S.C. § 3771(a)(4).
[5] 18 U.S.C. § 3771(e)(2)(A) (emphasis added)..
[6] *See* Fed. R. Crim. P. 32(i)(4)(B) ("before imposing sentence, the court must address any victim of *the crime* who is present at sentencing and must permit the victim to be reasonably heard") (emphasis added)..

conclusions de novo, its factual conclusions for clear error, and its discretionary judgments for abuse of discretion."[7]

Another District Court in our district succinctly found that "when a jury convicts a defendant, the first step [of determining who is a victim pursuant to the CVRA] is straightforward. The federal offense is the 'offense of conviction, based solely on facts reflected in the jury verdict.'"[8] The only reason a Court would need additional analysis, as reasoned by *Boeing*, is when a Court is "supposed to determine the 'federal offense committed' in the context of a deferred prosecution agreement."[9] Because Dr. Ortiz proceeded to trial, there is no mystery as to what constitutes the "offenses of conviction" and persons are not "crime victims" in this case unless they were directly and proximately harmed by the specific offenses in the counts of conviction. For this reason alone, JK, JM, RL, LS, MN, and MD are not "crime victims" in this casein this case.

If the Court were to shun a bright-line rule that "crime victims" are those directly and proximately harmed by the offenses in the counts of conviction, then it is difficult to see what method the Court could employ to determine if said persons are eligible for any of the rights afforded to victims under the CVRACVRA (to make victim impact statements, receive restitution, etc.) and whether the government and Court's obligations under the CVRA are triggered as to those persons. If the Court were to enlarge the universe of persons to include those referenced in the government's Notice pursuant to Federal Rule of Evidence 404(b), then would the Court first hold an evidentiary hearing? What would the standard be and how would it be determined? In any event,

---

[7] *In Re Ryan*, 88 F.4th 614, 621 (5th Cir. 2023).
[8] *United States v. Boeing*, 617 F.Supp. 3d 502, 508 (N.D.T.X. July 27, 2022) *citing In re McNulty*, 597 F.3d 344, 351 (6th Cir. 2010).
[9] *Id*.

there is no support for a claim that, in passing the CVRACVRA, Congress intended for its protections and rights to apply to persons other than those directly and proximately harmed by the offenses in the counts of conviction. To the contrary, as to restitution, 18 U.S.C. § 3663(a)(2) provides that "the term 'victim' means a person directly and proximately harmed as a result of the commission of an offense…" and the Fifth Circuit only permits said restitution to a victim "directly and proximately harmed by the defendant's offense of conviction." [10] It is difficult to see why "a person directly and proximately harmed as a result of the commission of an offense" would mean one thing in the context of 18 U.S.C. § 3663(a)(2) but another in the CVRA.

The Court should decline to categorize persons as "crime victims" in the absence of the satisfaction of the corresponding statutory criteria. The Court should resist the government's plea to make the upcoming sentencing hearing a free-for-all wherein anyone with a perceived perceived grievance against Dr. Ortiz may provide information for the Court's consideration as to the sentence it will impose. The defense submits that doing otherwise would be error. As set forth above, if seeing Dr. Ortiz punished in connection with the matters corresponding to JK, JM, RL, LS, MN, and MD is important enough to the government to urge this Court to add substantially to the sentence it would otherwise impose, then the government either should have sought corresponding counts from the Grand Jury or should seek them now.

---

[10] *Boeing*, 617 F. Supp. 3d 3d. 502 at 512 *citing United States v. Kim*, 988 F.3d 803, 811 (5th Cir.).

Respectfully submitted,

JASON HAWKINS
Federal Public Defender
Northern District of Texas

*/s/ John M. Nicholson*
JOHN M. NICHOLSON
Assistant Federal Public Defender
Northern District of Texas
Texas Bar # 24013240
525 Griffin Street, Suite 629
Dallas, Texas 75202
Phone (214) 767-2746
Fax (214) 767-2886
john_nicholson@fd.org

*s/ Marti R. Morgan*
MARTI R. MORGAN
Assistant Federal Public Defender
Northern District of Texas
Florida Bar # 91879
525 Griffin Street, Suite 629
Dallas, Texas 75202
Phone (214) 767-2746
Fax (214) 767-2886
marti_morgan@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2024, I electronically filed the foregoing document

using the Court's CM/ECF system, thereby providing service on attorneys of record.

*/s/ John M. Nicholson*
JOHN M. NICHOLSON